```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| FABRICE KAMAYOU,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS<br>LOWELL et al.,<br><br>    Defendants. | No. 16-CV-10098-IT |

**REPORT AND RECOMMENDATION ON UNIVERSITY'S FED. R. CIV. P.
12(b)(1) MOTION TO DISMISS (DKT. NO. 31)**

CABELL, U.S.M.J.

Fabrice Kamayou was a graduate student at the University of Massachusetts at Lowell ("the University") until the University expelled him after learning he'd been charged with domestic violence related offenses. Kamayou has brought suit against the University, its police department, and various University police officers for violating his constitutional rights, for tortious conduct, and for breach of contract. The defendants argue that they are immune from suit and move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. (Dkt. No. 31). Kamayou opposes the motion and the matter has been fully briefed. (Dkt. No. 37). After careful

consideration of the parties' submissions, the court recommends that the motion be granted in part and denied in part.

I. **RELEVANT FACTUAL BACKGROUND**

The facts are taken from the complaint and assumed to be true for purposes of the motion to dismiss.

In the fall of 2011, Kamayou enrolled as a graduate student at the University with the hopes of obtaining a Master of Science degree in applied mathematics. (Compl. ¶ 39). Kamayou was an exceptional student and maintained a perfect grade point average. (Id. at ¶ 43). In January 2013, however, things took a turn for the worse.

On January 10, 2013, Kamayou's former girlfriend, also a University student, falsely accused Kamayou of kidnapping her following a dispute with Kamayou's then current girlfriend, and Kamayou was subsequently charged with attempted kidnapping in the Clinton District Court. (Id. at ¶¶ 48, 55). Kamayou's former girlfriend also notified the University of the pending criminal charges and insisted that Kamayou be expelled and barred from the campus. (Id. at ¶ 49).

Immediately thereafter, the University suspended Kamayou and issued a no-trespass order barring him from the campus. (Id. at ¶¶ 50, 53). Kamayou did not receive prior notice of the University's adverse action against him and also was not offered an opportunity to be heard. (Id. at ¶ 50).

2

Following his suspension, the University ordered Kamayou to meet with its Coordinator of Student Conduct, defendant Bohdan Zaryckyj ("Zaryckyj"). (Id. at ¶ 56). Kamayou was instructed to first meet with Detective Mark Schaaf ("Schaaf") and Sergeant Scott Childs[1] ("Childs"), both members of the University's Police Department, who would then escort Kamayou to meet with Zaryckyj. (Id. at ¶ 57).

Upon arrival, Kamayou was escorted to Zaryckyj's office, where he was "placed in custody" while Officers Schaaf and Childs stood guard outside. (Id. at ¶ 60). Zaryckyj then proceeded to "interrogate" Kamayou about the criminal matter before the Clinton District Court, and demanded that Kamayou provide "a written statement" about the events surrounding the charge. (Id. at ¶¶ 61, 63). Zaryckyj then left the room, leaving Kamayou alone to write his statement. (Id. at ¶ 63). In a moment of panic, Kamayou called his sister, who reminded him of his attorney's instruction not to speak to anyone about the Clinton District Court matter without the attorney being present. (Id. at ¶ 65).

Kamayou then attempted to leave the room, taking with him Zaryckyj's notes of the interrogation. (Id. at ¶ 69). Zaryckyj instructed Officers Schaaf and Childs to physically restrain Kamayou and to forcibly take the notes from him. (Id. at ¶ 70).

---

[1] For ease, Detective Schaaf and Seargent Scott are referred to here as "Officers."

The Officers then "pounced" on Kamayou and "exerted a savage beating" on him. (Id. at ¶ 71).

As a result of this encounter, Kamayou was further charged with malicious or wanton damage to property, larceny, and resisting arrest. (Id. at ¶ 73). The Lowell District Court subsequently dismissed the malicious/wanton damage and larceny charges. (Id. at ¶ 76). Kamayou was acquitted of the resisting arrest charge following a jury trial. (Id. at ¶ 78).

But, while these criminal charges were still pending, Zaryckyj initiated a Campus Conduct Board Hearing against Kamayou, who once again was not given notice of the proceedings or an opportunity to be heard. (Id. at ¶¶ 80-83). The Board decided to expel Kamayou from the University. (Id. at ¶ 84).

## II. PROCEDURAL POSTURE

On October 23, 2017, the defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (Dkt. No. 31). They also moved on the same day for summary judgment. (Dkt. No. 33). The plaintiff filed an opposition to the motion to dismiss on November 11, 2017, and filed his opposition to the motion for summary judgment three days later, on November 14, 2017.

## III. THE COMPLAINT

The complaint contains twelve counts: Count I alleges that Zaryckyj and Officers Schaaf and Childs deprived Kamayou of his

4

First, Fourth, Sixth, Eighth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983; Count II alleges intentional infliction of emotional distress against all of the defendants; Count III alleges malicious prosecution against all of the defendants; Count IV alleges false arrest and false imprisonment against all of the defendants; Count V alleges assault and battery against Zaryckyj and Officers Schaaf and Childs; Count VI alleges that the University and the University Police Department failed to properly train, supervise and discipline its employees; Count VII alleges defamation against the University; Count VIII alleges intentional interference with advantageous relations against the University; Count IX alleges a breach of contract and a breach of the implied covenant of good faith and fair dealing against the University; Count X alleges that the University deprived Kamayou of his First, Fourth, Sixth, Eighth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983; Count XI requests specific performance by the University; and Count XII requests declaratory judgment against the University.

## IV.  LEGAL STANDARD

The defendants move to dismiss the entire complaint pursuant to Fed. R. Civ. P. 12(b)(1), on the ground that the University, the University Police Department, and the individual defendants in their official capacities enjoy sovereign immunity under the Eleventh Amendment. (Dkt. No. 32). On a motion to dismiss for

lack of subject matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007). In ruling on such a motion, the court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). "[D]ismissal is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." *Pomeroy v. United States*, No. 17-cv-10211-DJC, 2018 WL 1093501, at *1 (D. Mass. Feb. 27, 2018)(*quoting Muniz-Rivera v. United States*, 326 F.3d 8, 11 (1st Cir. 2003)).

**V.   ANALYSIS**

   **A. Counts II, VI, VIII, X, XI and XII Should be Dismissed Where the Plaintiff Voluntarily Assents to Their Dismissal**

As a threshold matter, Kamayou voluntarily assents to dismissal of six of the complaint's twelve claims. Specifically, in his opposition to the motion to dismiss, Kamayou voluntarily assents to the dismissal of Count VI (failure to properly train, supervise, and discipline), Count X (section 1983 claim against the University) and Count XII (declaratory judgment). And, although Kamayou initially opposed the dismissal of Count II (intentional infliction of emotional distress), Count VIII (intentional interference with advantageous relations), and Count

6

XI (specific performance), he apparently changed his mind in responding to the defendants' motion for summary judgment, and he now "voluntarily assents" to the dismissal of those three claims as well.  See Dkt. No. 38, *Plaintiff Fabrice Kamayou's Opposition to Defendants' Motion for Summary Judgment*.  Accordingly, it is not necessary to consider these six claims on the merits.  Rather, and consistent with the plaintiff's representations, Counts II, VI, VIII, X, XI and XII should be dismissed.

### B. Count I States a Valid Claim

Count I alleges a violation of 42 U.S.C. § 1983 against Zaryckyj and Officers Schaaf and Childs.  In order to prevail on a § 1983 claim a plaintiff must bring forth evidence that a "person" acting "under color of state law" deprived the plaintiff of a federally protected right.  *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001); *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir. 2001); *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001).  Kamayou contends here that the defendants violated his First, Fourth, Sixth, Eighth and Fourteenth Amendment rights.

The defendants move to dismiss Count I on two grounds.  They argue first that because they are state officials being sued in their official capacities, they are effectively the state, and not "persons" within the meaning of section 1983, and thus enjoy Eleventh Amendment sovereign immunity.  *See e.g., Nwaubani v. Grossman,* --- F. Supp. 3d ---, No. 13-12552-WGY, 2016 WL 4005614,

at *7 (D. Mass. July 26, 2016) ("[i]t is settled beyond peradventure ... that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.") (*quoting Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir. 1991)); *Fantini v. Salem State College,* 557 F.3d 22, 33 (1st Cir. 2009).

This argument has no force here, however, because the plaintiff has clarified in his opposition that he alleges Count I against the defendants in their individual capacities only. Crediting this assertion/clarification, the court concludes that the individual defendants are "persons" who may properly be sued for money damages in a section 1983 action. *Saintcome v. Tully*, 296 F. Supp. 3d 377, 381 (D. Mass. 2017); *see also Darul-Islam v. Dubois*, 997 F. Supp. 176, 178 (D. Mass. 1998)(plaintiff may sue "state officials in their individual capacity for monetary damages" for violation of section 1983).

The defendants argue that even assuming they may be sued, Count I should be dismissed because they enjoy qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). At the motion to dismiss stage "it is the defendant's conduct *as alleged in the complaint* that is

scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original). There is no serious dispute that the defendants' conduct as alleged in the complaint would violate at least one clearly established constitutional right.

The defendants' push for qualified immunity, even if potentially meritorious, is premature at this juncture. It is generally unwise to venture into a qualified immunity analysis at the pleading stage because in the majority of cases it is necessary to develop the factual record to test the veracity of the complaint's allegations. *See Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage."). Consequently, if qualified immunity is not granted at the motion to dismiss stage, nothing prevents a party from raising it again after further development of the facts. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009); *see also Olivio Gonzalez v. Teacher's Retirement Bd.*, 208 F. Supp. 2d 163, 167 (D.P.R. 2002) ("Since the issue of qualified immunity has been raised in the context of a motion to dismiss, and we conclude that the complaint contains sufficient factual allegations that could prohibit Defendants' reliance on the doctrine of qualified immunity, the court can

proceed no further.  However, Defendants are free to raise this issue in the context of a motion for summary judgment.").

The motion to dismiss with respect to Count I should therefore be denied, but without prejudice as it relates to the defendants' ability to renew their claim of qualified immunity.

### C. Counts III, IV, and V State Valid Tort Claims Against the Individual Defendants

Counts III-V allege that Zaryckyj and Officers Schaaf and Childs committed, respectively, malicious prosecution and abuse of process, false arrest and false imprisonment, and assault and battery.  The defendants move to dismiss these claims on the ground that they are public employees who are immune from suit under the Massachusetts Torts Claim Act ("MTCA"), M.G.L. c. 258.  The MTCA generally provides that "no . . . public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."  M.G.L. c. 258, § 2.  However, this grant of immunity is limited to claims sounding in negligence and it does not apply "to any claim arising out of an intentional tort, including, assault, battery, false imprisonment, false arrest . . . . malicious prosecution. . . and malicious abuse of process."  M.G.L. c. 258, § 10.

Against this backdrop, the defendants' argument fails at the outset because Counts III-V allege intentional torts, torts for which no MTCA immunity is available. Indeed, the MTCA explicitly identifies the claims asserted in Counts III-V as ones falling outside its scope. The defendants accordingly do not enjoy immunity for the claims raised in Counts III-V and this portion of the motion to compel therefore should be denied. *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 662 (D. Mass. 2016)("Conversely, section 10 [of the MTCA] exempts public employees from the immunity in section two for claims arising out of intentional torts thus rendering them potentially liable for an intentional tort.").

### D. Count VII Fails to State a Valid Claim Against the University

Count VII alleges that the University defamed the plaintiff. The gravamen of the claim is that Zaryckyj purposely interfered with the plaintiff's efforts to obtain a graduate degree by informing other universities that the plaintiff had kidnapped a fellow student and posed a danger to the community. As such, the plaintiff seeks to hold the University liable for Zaryckyj's tortious conduct. The defendants argue that Count VII should be dismissed because the University is immune from suit under the MTCA for the intentional torts of its employees. The court agrees.

Just as the MTCA allows for suits against public employees for their intentional tortious conduct, it bars a suit against the

11

employer for the same conduct. *See Consolo v. George*, 835 F. Supp. 49, 52 (D. Mass. 1993)(noting that under the MTCA "a public employer is immune from liability for the intentional torts of its public employees"). It follows that the University is immune from suit for a claim of defamation, and that Count VII therefore should be dismissed. *Langadinos v. Board of Trustees of University of Massachusetts*, No. 12-11159-GAO, 2013 WL 5507042, at *14 (D. Mass. Sep. 30, 2013)(dismissing defamation claim against University of Massachusetts Board of Trustees).

### E. Count IX Fails to State a Valid Claim Against the University

Count IX alleges that the University breached a contract as well as the implied covenant of good faith and fair dealing. The plaintiff contends that his enrollment at the University created a binding contract which obligated the University among other things to treat him fairly, provide him with due process, refrain from violating his constitutional rights, and to confer any degree rightly earned. The court agrees with the defendants that Count IX should be dismissed because the University is immune from suit as an arm of the Commonwealth of Massachusetts.

It is settled that the University is an arm of the state for purposes of the Eleventh Amendment's sovereign immunity provision. *See Taite v. Bridgewater State University,* 236 F. Supp. 3d 466, 476 (D. Mass. 2017). That provision provides that "[t]he judicial

12

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In more practical terms, this means that unless the state has consented to being sued, it is immune from suits brought against it in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

This matters here because, while the Commonwealth long ago waived its sovereign immunity with respect to *state court* breach of contract claims, see M.G.L. c. 212, § 3 (noting that superior court "shall have exclusive original jurisdiction . . . of claims against the commonwealth"), it has not so consented to suit against it in *federal court*. *McGuigan v. Conte*, 629 F. Supp. 2d 76, 83 (D. Mass. 2009)(Commonwealth's waiver of sovereign immunity in breach of contract actions "does not . . . necessarily extend so far as to permit lawsuits against the Commonwealth *in federal court*")(emphasis in original). Consequently, the University does enjoy immunity from suit in this federal court for breach of contract. Count IX therefore should be dismissed. *See BT INS, Inc. v. University of Massachusetts*, No. 10-11068-DPW, 2010 WL 4179678, at *5 (D. Mass. Oct. 19, 2010)(dismissing breach of contract claim against the University of Massachusetts for lack of subject matter jurisdiction).

**VI.   CONCLUSION**

For the foregoing reasons, the court recommends that the University's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss (Dkt. No. 31) be GRANTED in part and DENIED in part.  More specifically, the motion to dismiss should be GRANTED with respect to Counts II, VI, VII, VIII, IX, X, XI and XII, and should be DENIED with respect to Counts I, III, IV and V.[2]

                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  July 26, 2018

---

[2] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Secretary of Health and Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982).