THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FABRICE KAMAYOU,

     Plaintiff,

v.                                                 No. 16-cv-10098-IT

UNIVERSITY OF MASSACHUSETTS
LOWELL et al.,

     Defendants.

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT (DKT. NO. 33)**

CABELL, U.S.M.J.

## I.   INTRODUCTION

The University of Massachusetts Lowell ("the University") expelled Fabrice Kamayou after conducting an investigation into allegations he had committed serious domestic violence related conduct. Kamayou brought suit and the complaint at present asserts civil rights and tort claims against three individuals, including the University administrator who led the investigation and two University police officers. The defendants move for summary judgment; the plaintiff opposes the motion. (Dkt. Nos. 33, 38). For the reasons discussed below, the court recommends that the motion be granted with respect to the administrator, and granted in part and denied in part with respect to the police officers.

## II.   RELEVANT FACTUAL BACKGROUND

### A. <u>The Parties</u>

Fabrice Kamayou was at all relevant times a graduate student at the University.  Defendant Bohdan Zaryckyj was the University's Coordinator of Student Conduct.  Defendants Scott Childs and Mark Schaaf were Sergeants with the University Police Department.

### B. <u>The Incident and Kamayou's Suspension</u>

On January 14, 2013, a female University student reported to University police that Kamayou had recently punched her in the chest, pinned her down, forcibly placed her in the trunk of his car, and drove away while she was still in the trunk.  (University Defendants' Statement of Material Facts In Support of Their Motion for Summary Judgment ("Defendants' SUF"), at ¶ 1; Plaintiff's Response to Defendants' Statement of Material Facts In Support of Their Motion for Summary Judgment ("Plaintiff's Responses"), at ¶¶ 1,3).  As the University was learning of the allegations, Kamayou was separately charged in state court with one count of kidnapping, two counts of domestic assault and battery, one count of threatening to commit a crime, and one count of intimidation of a witness. (Defendants' SUF, at ¶ 53; Plaintiff's Responses, at ¶ 53).

The University Police Chief learned of the charges and sent an email to various University employees alerting them of the

incident and Kamayou's arrest. (Defendants' SUF, at ¶ 4; Plaintiff's Reponses, at ¶ 4). Zaryckyj was asked to investigate the matter further as the University's Coordinator of Student Conduct. (Plaintiff's Concise Statement of Material Facts of Record ("Plaintiff's SUF"), at ¶ 26.

On the following morning, January 15, 2013, the University's Vice Provost for Graduate Education informed Kamayou by letter that he was being placed on interim suspension pending an investigation. (Defendants' SUF, at ¶ 5; Plaintiff's Responses, at ¶ 5). That same day, University police and Fitchburg police officers personally hand delivered a copy of the Vice Provost's letter to Kamayou at his residence, along with a criminal trespass notice barring him from going onto campus. (Defendants' SUF, at ¶¶ 5-6; Plaintiff's Responses, at ¶¶ 5-6). Kamayou opened and read both notices in the presence of officers and indicated that he fully understood their contents. (Defendants' SUF, at ¶ 6; Plaintiff's Responses, at ¶ 6).

## C. Kamayou's Meeting with Zaryckyj

The University had not spoken to the victim or Kamayou about the incident prior to placing him on interim suspension. (Plaintiff's SUF, at ¶¶ 31-32, 38). On January 25, 2013, Kamayou met with Zaryckyj to give his version of events, and to possibly provide a written statement. (Defendants' SUF, at ¶¶ 9-10; Plaintiff's Responses, at ¶¶ 9-10). Due to Kamayou's status,

Zaryckyj instructed him to wait in the University's parking lot when he arrived; University police, and in particular Sergeants Childs and Schaaf, would then escort Kamayou to Zaryckyj's office for the meeting, and then escort him back to his vehicle when the meeting was over. (Defendants' SUF, at ¶ 12; Plaintiff's Responses, at ¶ 12; Plaintiff's SUF, at ¶ 48). The parties agree that the meeting took place but disagree as to what happened during it.

According to the defendants, Kamayou admitted that he had "grabbed [the female University student] with both hands" and "put her in the trunk of the car and shut the trunk." (Defendants' SUF, at ¶ 13). Zaryckyj then left Kamayou alone in his office so that Kamayou could prepare a written statement. (Defendants' SUF, at ¶ 14). When Zaryckyj returned, Kamayou was talking on the phone but then quickly hung up. Kamayou suddenly "grabbed" the handwritten notes that Zaryckyj had been taking during the meeting and attempted to leave Zaryckyj's office. (Defendants' SUF, at ¶ 15).

Zaryckyj alerted Sergeants Childs and Schaaf, who were standing guard outside of the office, that Kamayou had taken his notes. (Defendants' SUF, at ¶ 16). Sergeant Childs asked Kamayou to return the notes but Kamayou refused and instead "stuff[ed] them in his mouth as if to eat them." (Defendants' SUF, at ¶¶ 16-17). Sergeants Childs and Schaaf then brought Kamayou to the

4

ground in an effort to retrieve the notes. (Defendants' SUF, at ¶ 18). They ordered Kamayou to place his hands behind his back so he could be handcuffed but Kamayou became increasingly violent and resisted. (Defendants' SUF, at ¶¶ 19-21). At some point during the struggle, Kamayou spit the notes out of his mouth. (Defendants' Exhibit A-20, University of Massachusetts Lowell Police Department Report prepared by Detective Mark Schaaf). Kamayou was eventually handcuffed, brought to his feet and seated in a nearby chair. (Id.). He attempted to stand back up but was ordered to remain seated. When he refused, the officers restrained him to the chair. (Id.). In due course, Kamayou was escorted to the Lowell Police Department for booking. (Id.).

Kamayou characterizes things differently. He contends that he was escorted to Zaryckyj's office "for his detention" and "interrogat[ion]" on the domestic violence related allegations. (Plaintiff's SUF, at ¶ 48). No one advised him of the reason for his detention or advised him of his rights, and no one gave him an opportunity to confer with his counsel prior to providing a statement. (Id.). Kamayou told Zaryckyj that his attorney had advised him not to speak to anyone outside of the attorney's presence but Zaryckyj told him that it "was in his best interest to do so." (Plaintiff's SUF, at ¶ 49). Zaryckyj proceeded to interrogate Kamayou for a half hour and then demanded that he provide a written statement. Zaryckyj also told him that providing

5

a statement was the only option Kamayou had if he wished to receive his degree. (Plaintiff's SUF, at ¶ 51; Plaintiff's Responses, at ¶ 14).

As it pertains to the meeting notes, Kamayou insists that the notes were written by both Kamayou and Zaryckyj rather than just Zaryckyj alone. (Id.; Plaintiff's Responses, at ¶ 15). Kamayou states that when he was left alone to draft his statement, he became overwhelmed and decided to leave. (Plaintiff's SUF, at ¶ 53). He contends that he put the notes in his backpack and made his way to the door, but Zaryckyj refused to end the meeting and blocked the exit. (Id.; Plaintiff's SUF, at ¶ 54). Zaryckyj then alerted Sergeants Schaaf and Childs that Kamayou had taken his notes and Kamayou in turn stuffed the notes in his mouth. (Defendants' Exhibit A, Kamayou Dep. 215: 4-6).

According to Kamayou, Zaryckyj instructed Sergeants Schaaf and Childs to physically restrain Kamayou and to take the notes from him. (Plaintiff's SUF, at ¶ 55). The officers accordingly "pounced" on Kamayou, took him to the ground, and forcibly recovered the notes from his mouth. (Plaintiff's SUF, at ¶ 57; Plaintiff's Responses, at ¶ 16; Defendants' Exhibit A, Kamayou Dep. 215: 16-22). Kamayou does not recall what happened after he was taken to the ground. (Defendants' Exhibit A, Kamayou Dep. 216: 3-17). He contends that if he did engage in any conduct that appeared to look like resistance, he was not resisting and was

only trying to reposition his body because he was having difficulty breathing. (Defendants' Exhibit A, Kamayou Dep. 216: 18-22).

Kamayou was subsequently arrested and charged in state court with one count of vandalizing property (Zaryckyj's notes), one count of larceny for the theft of Zaryckyj's notes, and one count of resisting arrest.[1] (Plaintiff's SUF, at ¶ 61).

### D. <u>Code of Conduct Disciplinary Process</u>

On January 28, 2013, Kamayou received an official notice from the University informing him of "Code of Conduct" charges lodged against him as a result of his conduct during the meeting with Zaryckyj. (Defendants' SUF, at ¶ 27; Plaintiff's Responses, at ¶ 27). On February 12, 2013, Kamayou met with Zaryckyj to respond to the Code of Conduct charges. Kamayou among other things signed a formal denial of the charges against him, executed a release form granting the University permission to speak with his attorney, and made a formal request for a Conduct Board hearing, which was set for February 22, 2013. (Defendants' SUF, at ¶¶ 28-31; Plaintiff's Responses, at ¶¶ 28-31).

In advance of the hearing, Zaryckyj informed Kamayou that he had the right to be represented by an attorney and that he should immediately notify Zaryckyj if he believed any of the listed Conduct Board members scheduled to hear the matter presented a

---

[1] The vandalism and larceny charges were dismissed in January 2014 and Kamayou was acquitted in May 2015 on the resisting arrest charge following a jury trial. (Plaintiff's SUF, at ¶ 65).

conflict of interest. (Defendants' SUF, at ¶ 32; Plaintiff's Responses, at ¶ 32). Zaryckyj also sent Kamayou a script and outline of the hearing. (Defendants' SUF, at ¶ 34; Plaintiff's Responses, at ¶ 34).

On February 22, 2013, the hearing proceeded as scheduled. On February 25, 2013, Zaryckyj informed Kamayou by e-mail that the Conduct Board had determined that Kamayou had violated the Code of Conduct as charged and was accordingly to be expelled from the University. (Defendants' SUF, at ¶ 41; Plaintiff's Responses, at ¶ 41). Zaryckyj informed Kamayou of his right to appeal and provided him with a link to the Code outlining the appellate procedure. (Defendants' SUF, at ¶ 42; Plaintiff's Responses, at ¶ 42). Kamayou was also informed that the deadline to appeal the Board's decision was March 4, 2013. (Id.).

Notwithstanding this email, Kamayou emailed Zaryckyj about two weeks later, on March 7, 2013, asking for an update on the Board's decision. (Defendants' SUF, at ¶ 43; Plaintiff's Responses, at ¶ 43). Zaryckyj responded that he had sent the Board's letter by email and by certified U.S. mail on February 25, 2013, per Kamayou's request, and that Kamayou no longer had the right to appeal because the deadline had passed. (Defendants' SUF, at ¶¶ 44-48; Plaintiff's Responses, at ¶¶ 44-48).

### III. THE COMPLAINT

Following prior litigation, the complaint asserts four claims against Zaryckyj and Sergeants Schaaf and Childs.  Count I alleges that the defendants deprived Kamayou of his First, Fourth, Sixth, Eighth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983.  Count III asserts a state common law claim for malicious prosecution and abuse of process.  Count IV asserts a claim for state common law claim for false arrest and imprisonment.  Finally, Count V asserts a state common law claim for assault and battery.

### IV.  LEGAL STANDARD

When the court is presented with a motion for summary judgment, it shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "assert[ing] the absence of a genuine issue of material fact and then support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).  Once the moving party meets that burden, in order to avoid summary judgment, the opposing party must "show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (*quoting Ingram v.*

*Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005)).  Indeed, the opposing party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (*quoting Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).

When determining whether summary judgment is appropriate, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Id.* (*citing Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000)).  The Federal Rules require "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted).

## V.   ANALYSIS

### A. Count I – Claims Under 42 U.S.C. § 1983

Count I alleges a violation of 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  In order to prevail under section 1983, a plaintiff must show that the defendants (1) acted under "color of state law," and (2) deprived [the] plaintiff of a right secured by the Constitution or the laws of the United States. *Budnick v. Baybanks, Inc.*, 921 F. Supp. 30, 32 (D. Mass. 1996).  In this case, Kamayou contends the defendants have violated at least five of his constitutional rights, through as many as eight distinct acts, including by (1) falsely arresting him; (2) maliciously prosecuting him; 3) falsely imprisoning him; (4) engaging in an abuse of process to conceal their conduct; (5) assaulting and battering him; (6) subjecting him to cruel and unusual punishment; (7) using excessive force; and (8) depriving him of due process with respect to the University's decision to withhold his degree.[2]  Assuming that is

---

[2] Evaluating the scope and merits of Count I has presented more of a challenge than perhaps it should have, for two reasons.  First, where Count I alleges violations of the First, Fourth, Sixth, Eighth and Fourteenth Amendments, there are just too many potential claims crammed in it.  Moreover, the complaint does not specify what conduct underlies each invoked Amendment and instead simply alludes to the eight acts noted above, leaving it to the court to determine which act allegedly violates which Amendment.  Second, and drafting issues aside, the defendants fail to address Count I in their brief beyond arguing in cursory fashion that the defendants did not violate section 1983.  In the court's view, Rules 8 and 56 call respectively for simpler and

correct, the court finds the defendants should be entitled to summary judgment on all claims except for the claim of excessive force. Summary judgment is not appropriate on that claim because there are material disputes of fact bearing on whether Sergeants Schaaf and Childs used excessive force in restraining Kamayou.

1. <u>False Arrest</u>

Kamayou alleges that the defendants arrested him without cause. "The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause." *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989). Consequently, "[t]he constitutionality of a warrantless arrest 'depends ... upon whether, at the moment the arrest was made, the officer[ ] had probable cause to make it.' " *Logue v. Dore*, 103 F.3d 1040, 1044 (1st Cir. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause will be found "if —and only if— the facts and circumstances of which the arresting officer has knowledge are sufficient to lead an ordinarily prudent officer to conclude that an offense has been, is being, or is about to be committed, and that the putative arrestee is involved in the crime's commission." *Id.* Accordingly, the standard to apply in evaluating the existence of probable cause and the legality of the ensuing arrest is an objective one; "as long as the circumstances

---

clearer claims drafting and more honed and substantive argument than what has been provided here.

surrounding the event warrant the officer's reasonable belief that the action taken is appropriate, the arrest is justified." *Id.* Finally, "though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." *Id.*

In the instant case, the court finds that although the parties may offer competing narratives regarding Kamayou's arrest, the facts that are not disputed support a finding of probable cause to arrest Kamayou for stealing Zaryckyj's notes and for resisting arrest, two of the offenses with which he was charged. As noted, there is no dispute that Kamayou left Zaryckyj's office abruptly, with the notes, and that Zaryckyj called to Sergeants Schaaf and Childs, located just outside, to stop him and retrieve the notes. Given Zaryckyj's role and the common understanding that the meeting with Kamayou was to allow Zaryckyj to collect evidence related to the investigation, the officers could reasonably rely upon Zaryckyj's call for help to support their belief that Kamayou had stolen the notes and was trying to flee with them. *See e.g., Holder v. Town of Sandown*, 585 F.3d 500, 505 (1st Cir. 2009) (citing *Forest v. Pawtucket Police Dep't.*, 377 F.3d 52, 57 (1st Cir. 2004)) (noting that the First Circuit has "affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause"). There is a dispute as to whether the officers asked Kamayou for the notes or

simply forced him to the ground and retrieved them but Kamayou concedes the possibility that he may have acted in a manner consistent with resistance when the officers brought him to the ground in an effort to get the notes.  Based on these facts, the court concludes that the officers had a basis to believe Kamayou had stolen the notes and therefore had probable cause to arrest him.  Accordingly, the defendants are entitled to summary judgment on this claim.  Independently, Zaryckyj is also entitled to summary judgment because he did not physically participate in Kamayou's arrest.  *See Eason v. Alexis*, 824 F. Supp. 2d 236, 242 (D. Mass. 2011) (granting summary judgment in favor of law enforcement officers who did not physically arrest plaintiff).

Even assuming the arrest was not supported by probable cause, the court finds that the officers would be entitled to qualified immunity.  Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*,

457 U.S. at 818–19). While qualified immunity cannot protect the
officers from liability if, on an objective basis, no reasonably
competent officer would have acted as they did, "if officers of
reasonable competence could disagree on [the lawfulness of the
alleged conduct], immunity should be recognized." *Malley v.
Briggs*, 475 U.S. 335, 341 (1986). Thus, the defense of qualified
immunity "provides ample protection to all but the plainly
incompetent or those who knowingly violate the law." *Id.*

The First Circuit, drawing on Supreme Court precedent, has
developed a three-part procedure for determining whether a state
actor is entitled to qualified immunity. The procedure requires
this court to consider

> (i) whether the plaintiffs' allegations, if true,
> establish a constitutional violation; (ii)
> whether the constitutional right at issue was
> clearly established at the time of the putative
> violation; and (iii) whether a reasonable
> officer, situated similarly to the defendant,
> would have understood the challenged act or
> omission to contravene the discerned
> constitutional right.

*Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004). Ordinarily,
"proper development of the law of qualified immunity is advanced
if courts treat these three questions sequentially." *Id.*

The first two prongs of the test for qualified immunity are
satisfied with respect to Kamayou's false arrest claim. Assuming
*arguendo* that the officers behaved as Kamayou contends and simply
arrested him without first asking him if he had the notes and was

15

willing to hand them over, such facts could support a finding that the officers deprived Kamayou of his Fourth Amendment rights by arresting him without probable cause.   Moreover, there is no dispute that the right to remain free from arrest without probable cause was well established at the time of the incident. *See Santiago*, 891 F.2d at 386 ("The right to be free from unreasonable seizures of the person was well established long before 1983."). Accordingly, in this case, "the question of [the offcers'] immunity for false arrest turns on whether, without regard to [their] state of mind, there was probable cause or arguably probable cause to make the arrest."  *Id.*

The court finds that an objectively reasonable police officer could have believed that Kamayou had stolen Zaryckyj's notes, and consequently, that there was probable cause to arrest Kamayou for larceny.  The reasonableness standards that underlie the probable cause and qualified immunity inquiries are not identical; qualified immunity requires a "somewhat lesser showing." *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004).  Thus, "if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." *Id.*  Accordingly, even if the officers had no probable cause to arrest Kamayou, they are entitled to qualified immunity unless the arrest was obviously unlawful at the time it was executed.  *See Anderson*, 483 U.S. at 641 (law enforcement officials should not be held liable where they

reasonably but mistakenly conclude that probable cause is present); *Limone*, 372 F.3d at 44 ("the qualified immunity defense should prevail unless the unlawfulness of the challenged conduct was 'apparent' when undertaken."). For the reasons detailed above, Kamayou's arrest was not obviously unlawful at the time it was made. Therefore, qualified immunity would shield the defendants from liability for false arrest. *See Cox*, 391 F.3d at 31.

Summary judgment should therefore enter for the defendants on this claim.

2. <u>Malicious Prosecution</u>

Kamayou contends that the defendants' actions amounted to an "unlawful deprivation of [his] liberty and property without due process of law by . . . maliciously prosecuting him." The court interprets this phrasing to assert a claim against all three defendants for malicious prosecution relating to the charges of larceny, vandalism and resisting arrest Kamayou faced in state court following his arrest by Sergeants Schaaf and Childs, none of which led to a conviction.

The defendants are entitled to summary judgment on this claim, for three reasons. First, in bringing a § 1983 claim, "it is the plaintiff's burden to identify the specific constitutional right infringed." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). "[A] garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail." *Id.* (quoting *Roche v. John Hancock*

17

*Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996)).  As Kamayou has made no attempt to meet his burden of identifying the constitutional violation at issue in his malicious prosecution claim, the claim fails.

Second, even were Kamayou to invoke a specific right or amendment, the claim would fail on the merits.  Assuming one reads Kamayou's allusion to "due process" to refer to the Fourteenth Amendment's Due Process Clause, it is well-established that a malicious prosecution does not support a claim of a substantive due process violation, so that cannot be the constitutional violation which supports a § 1983 claim.  *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 n.4 (1994)) ("substantive due process may not furnish the constitutional peg on which to hang a federal malicious prosecution" claim).  The Fourth Amendment does recognize an individual's "right to be free from unreasonable seizure when he becomes detained pursuant to a judicial process," *see Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 100 (1st Cir. 2013), but that does not save Kamayou's claim here because he must in order to prevail show that the defendants "caused . . . a seizure of the plaintiff pursuant to a legal process unsupported by probable cause" and that the subsequent criminal proceedings "terminated in his favor."  *Id.* at 101.  Kamayou cannot make that showing here because, as noted above, the arrest leading to the legal process was supported by probable cause.

Third, even assuming *arguendo* that the defendants' conduct somehow amounted to a violation of Kamayou's Fourth Amendment rights, they would be entitled to qualified immunity.  The state of the law in the First Circuit as to whether the Fourth Amendment encompasses claims of malicious prosecution for purposes of section 1983 remained unsettled until the First Circuit's opinion in *Hernandez-Cuevas*, which was not issued until July 17, 2013, that is, after Kamayou was arraigned in February 2013 on the charges arising from his arrest.  Because the Fourth Amendment right to be free from malicious prosecution was not clearly established at the time these events came to pass, it follows that the defendants would be entitled to qualified immunity.  *See Echavarria v. Roach*, No. 16-cv-11118-ADB, 2017 WL 3928270, at *8 (D. Mass. Sept. 7, 2017(granting qualified immunity to individual defendants where state of the law regarding Fourth Amendment protection for malicious prosecution was unclear as of July 2013).

Summary judgment therefore should enter in the defendants' favor on this claim.

### 3. False Imprisonment

Kamayou alleges that the defendants falsely imprisoned him when Sergeants Schaaf and Childs "illegally delivered" Kamayou to Zaryckyj's office for an "interrogation" and thereafter restricted his ability to leave the enclosed office.  To succeed on such a claim, Kamayou would have to show that he was intentionally and

unlawfully confined, either directly or indirectly, and that he was either conscious of the fact that he was being confined or harmed as a result of the confinement. *Jonielunas v. City of Worcester Police Dep't.*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004) (noting that false imprisonment is "an intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement"). However, "where a police officer has probable cause to arrest an individual, there is legal justification for the confinement, and no cause of action for false imprisonment under Massachusetts law." *Walker v. Femino*, 311 F. Supp. 3d 441, 455 (D. Mass. 2018).

The court finds here that the defendants did not falsely imprison Kamayou. On the contrary, the record demonstrates that Kamayou was never confined against his will. Rather, the defendants and Kamayou understood that Kamayou's meeting with Zaryckyj was just that, a meeting, and not a custodial interrogation. Indeed, Kamayou was told prior to the meeting that the purpose of the meeting was to allow him to formally tell his side of the story, and he went to the meeting under his own power. Further, Kamayou's allegation that he was at some point confined to Zaryckyj's office is easily belied by the fact that he left the office, and was intercepted not because he left, but because he reportedly took Zaryckyj's notes. Kamayou has not adduced any

facts to the contrary and has also not cited to any authority suggesting a viable false imprisonment on facts such as those present here.  Accordingly, summary judgment should be entered in the defendants' favor on this claim.

    4. <u>Abuse of Process</u>

Kamayou alleges that the defendants engaged in an abuse of process type scheme "in order to insulate and defend their wrongful acts."  Whatever this may mean, it is not necessary to reach the merits of the claim because "the First Circuit does not recognize § 1983 claims based upon an alleged abuse of process." *Boyle v. Barnstable Police Dep't.*, 818 F. Supp. 2d 284, 316 (D. Mass. 2011) (citation and internal quotation marks omitted).  Summary judgment therefore should enter in favor of the defendants on this claim.

    5. <u>Assault and Battery</u>

Kamayou alleges that the defendants assaulted and battered him when they arrested him.  As an initial matter, it is not clear whether a claim for assault and battery is cognizable in a section 1983 action.  *See Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018); *see also Hardin v. Bemis,* 920 F.2d 932, at *1 (6th Cir. 1990)(plaintiff's "assault and battery allegation is common law tort which is not in itself cognizable under § 1983"); *Brown v. Hillborough County Sheriff's Office*, No. 8:08-cv-88-T-33TGW, 2009 WL 413576, at *3-4 (M.D. Fla. Feb. 18, 2009)(assault and battery not cognizable under section 1983).

Regardless, recognizing that Kamayou elsewhere contends that the defendants used excessive force, the court views this claim as duplicative of that claim. *Parker v. Town of Swansea*, 310 F. Supp. 2d 356, 369 (D. Mass. 2004)(standard for determining reasonable force for assault and battery claims and Fourth Amendment excessive force claims is "essentially the same") (citing *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991)).  In the interests of efficiency, summary judgment should therefore enter in the defendants' favor on this claim.

      6. <u>Cruel and Unusual Punishment</u>

      Kamayou alleges that the defendants arrested and beat him and forced him to endure a baseless prosecution and in so doing subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  This claim fails at the outset because Kamayou was not a prisoner and the Eighth Amendment's protections apply to prisoners only. *See Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977); *see also Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Carapellucci v. Town of Winchester,* No. 85-4561-K, 1986 U.S. Dist. LEXIS 1708, at *9 (D. Mass. Dec. 1, 1986) (Eighth Amendment's protections apply "only to prisoners incarcerated pursuant to a criminal conviction.").  Summary judgment should thus enter in the defendants' favor on this claim.

7. Excessive Force Claim

Kamayou alleges that the officers used excessive force when they arrested him.   More specifically, he alleges that they "pounced" on him, "exerted a savage beating" on him, and then arrested and restrained him to a chair.   Where an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures." *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 51 (1st Cir. 2005).   But, because "Fourth Amendment jurisprudence has long recognized that the right to make an arrest [or seizure] necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *see Nolan v. Krajcik*, 384 F. Supp. 2d 447, 463 (D. Mass. 2005)(*quoting Graham*, 490 U.S. at 396), the relevant inquiry "is whether the force used was objectively reasonable under all the circumstances, that is, whether it was consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 205 (1st Cir. 1990).   "An officer's evil intentions will not make a Fourth Amendment violation of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*,

490 U.S. at 397; *see also Stamps v. Town of Framingham*, 38 F. Supp. 3d 146, 152 (D. Mass. 2014) ("The officer's subjective intent or motivation is not relevant to the reasonableness inquiry.").

Applied here, the court finds that Zaryckyj is entitled to summary judgment on this claim because there is no evidence or allegation that he participated in Kamayou's arrest, or that the officers acted at his direction as it related to what level of force to use in restraining Kamayou. That being said, the court finds that summary judgment is not appropriate as it relates to Sergeants Schaaf and Childs because there is a genuine dispute of fact as to whether they used excessive force in effecting Kamayou's arrest.

To begin, the relevant inquiry is whether the amount of force the officers used to effect Kamayou's arrest was objectively reasonable under the circumstances. *Gaudreault*, 923 F.2d at 205. In making such a determination, "courts must pay careful attention to the facts and circumstances of the particular case at hand, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Titus v. Town of Nantucket*, 840 F. Supp. 2d 404, 414 (D. Mass. 2011) (*quoting Gaudreault*, 923 F.2d at 205)(internal quotation marks omitted); *see also Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010).

Against this backdrop, the court cannot find as a matter of law that the amount of force the officers used to arrest Kamayou was objectively reasonable.  Taking the record in a light most favorable to the plaintiff, and crediting his testimony, a jury could conclude that the officers used objectively unreasonable force in physically subduing and restraining the plaintiff where he was not fleeing, had not committed a violent act, did not pose a threat to the officers, and did not resist when they brought him to the ground.  True, Kamayou appears to concede that he may have flailed his arms and legs while on the ground, but a juror crediting his testimony could conclude that he was merely trying to reposition his body so he could breathe more easily. Accordingly, summary judgment should be denied on the excessive force claim as to Sergeants Schaaf and Childs.  *See e.g., Ciolino v. Eastman*, 128 F. Supp. 3d 366, 375-76 (D. Mass. 2015)(denying summary judgment on excessive force claim where record could support conclusion that defendants used excessive force in taking the plaintiff to the ground and handcuffing him with force after he taunted police dogs); *Titus*, 840 F. Supp. 2d at 414 (denying summary judgment on excessive force claim where plaintiff was charged with violating a restraining order, was not physically violent towards arresting officers, and did not flee or resist arrest); *Nolan*, 384 F. Supp. 2d at 464(denying summary judgment on excessive force claim where defendants placed plaintiff in a choke

hold, plaintiff experienced difficulty breathing, and defendants twisted plaintiff's arm).

### 8. Due Process Claim

Because he was expelled, Kamayou never received his graduate degree.  He contends that the defendants' failure to award him the degree constituted a violation of his Fourteenth Amendment due process rights.

As background, Kamayou had earned his bachelor's degree in mathematics from the University in May 2011.  (Plaintiff's SUF, at ¶ 71).  Shortly prior to graduating, Kamayou was accepted to the University's so-called "4+1 program," meaning that he could continue his studies at the University for a graduate degree at an accelerated pace.  (Id.).

On March 23, 2012, the University's Math Department sent Kamayou a link to the Graduation Clearance Form and advised him that the form had to be submitted no later than April 27, 2012 if he wished to graduate that spring.  (Defendants' SUF, at ¶ 130; Defendants' Exhibit B, Kamayou Dep. 107: 10-18).  Kamayou failed to submit the Graduation Clearance Form by the deadline. (Defendants' SUF, at ¶ 130; Defendants' Exhibit B, Kamayou Dep. 107: 22-24).  Ultimately, Kamayou decided to extend his studies by another year so that he could complete three more required classes, meaning that he would now graduate in May 2013.  (Defendant's SUF, at ¶¶ 131-132, 138; Plaintiff's Responses, at ¶¶ 131-132, 138).

Kamayou registered for classes in his final semester at the University. (Plaintiff's SUF, at ¶ 74). Kamayou contends that he already had amassed enough credits to graduate and only registered because he was hoping to gain additional experience as a teaching assistant, and the University was in exchange offering the classes to him at no cost. (Id.). The defendants disagree with this characterization and maintain that Kamayou actually needed three more graduate credits to earn his degree. (Defendants' SUF, at ¶ 136).

Following Kamayou's interim suspension, however, Zaryckyj corresponded with members of the University's mathematics department and the University's Director of Graduate Administration to ascertain how Kamayou's suspension might affect his ability to earn his degree. (Plaintiff's SUF, at ¶ 75). Zaryckyj was informed that although Kamayou had enough credits to graduate as of January 2013, he would first need to submit a petition to transfer three of his undergraduate credits towards his graduate degree. (Id.). Kamayou did not submit the necessary paperwork, including a Graduate Clearance form, prior to his suspension, and was foreclosed from doing so once he was expelled. (Id.).

The Due Process Clause of the Fourteenth Amendment "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to

implement them." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005).   In general terms, whenever a plaintiff is alleging that state actors engaged in certain acts that violated his substantive due process rights, the plaintiff must show "both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." *Correia v. Town of Framingham*, 969 F. Supp. 2d 89, 95 (D. Mass. 2013) (*citing Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011)).   Although there is no "scientifically precise formula for determining whether executive action is – or is not – sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment . . . [e]xecutive acts that shock the conscience must be truly outrageous, uncivilized, and intolerable." *Grenier v. Town of Shrewsbury*, 52 F. Supp. 3d 149, 163 (D. Mass. 2014) (*quoting Harron*, 660 F.3d at 536) (internal quotation marks omitted); *see also Maymi v. Puerto Rico Ports Authority*, 515 F.3d 20, 30 (1st Cir. 2008) ("The state conduct itself must be so brutal, demeaning, and harmful that it is shocking to the conscience.").   Indeed, the burden of proving conscious shocking behavior remains deliberately high in an effort to protect the Constitution from "demotion to merely a font of tort law." *Cummings v. McIntire,* 271 F.3d 341, 344 (1st Cir. 2001).

Applying the foregoing here, summary judgment should enter in the defendants' favor.  As an initial matter, Kamayou has not shown that a student has a protected property interest in his graduate degree.  *See e.g., Richmond v. Fowlkes*, 228 F.3d 854, 859 (8th Cir. 2000)("[w]hether a student who is subject to academic dismissal may maintain a cause of action for the violation of his right to substantive due process remains an open question.").  Moreover, "the Supreme Court never has held that the interest in continued education at a public university constitutes a fundamental property or liberty interest that finds refuge in the substantive protections of the Due Process Clause." *Martinson v. Regents of University of Michigan*, 562 Fed. Appx. 365, 375 (6th Cir. 2014) (*citing Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 222-23 (1985)).

Even assuming without deciding that Kamayou does have a constitutionally protected property interest in his graduate degree, there is no evidence that any of the defendants here played any role in the University's decision to decline to award Kamayou his degree.  On the contrary, the record reflects that Kamayou's ultimate failure to receive his degree flowed from his failure to timely submit the Graduate Clearance Form.  Consequently, there is no basis to subject the individual defendants to liability for the University's decision.  Accordingly, summary judgment should enter in favor of the defendants.

B. **The State Claims**

1. Malicious Prosecution (Count III)

Count III alleges a common law claim of malicious prosecution. In order to prevail on such a claim under Massachusetts law, a plaintiff must show: "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves*, 241 F.3d at 53. "In broad brush, an individual may be said to have instituted criminal proceedings against another if he caused those proceedings to be initiated." *Limone v. U.S.*, 579 F.3d 79, 89 (1st Cir. 2009). Generally, this is found where the defendant "induces another person . . . to lodge formal criminal charges," or "exercises a peculiar degree of control over the charging official or adamantly presses that official to bring a criminal complaint." *Id.* Malice is found where there was no probable cause for the prosecution and the defendant acted with an improper motive or was motivated by malice. *Beecy v. Pucciarelli*, 387 Mass. 589, 593–94 (1982).

This claim fails easily in light of the court's treatment of the section 1983 analog. As noted above, the court has found that the officers had probable cause to arrest Kamayou for larceny at a minimum. He therefore cannot show that the defendants here initiated or maintained the subsequent criminal proceedings

against him knowing that there was no probable cause to support those charges.  Summary judgment should thus enter on this claim.

   2. Abuse of Process Claim (Count III)

Count III also alleges a claim of abuse of process, although it is not clear whether Kamayou asserts it as a claim separate and apart from his malicious prosecution claim.  Assuming he means to assert a distinct claim for abuse of process, he appears to allege that the defendants had baseless charges brought against him, with malice, in order to "provid[e] a defense to their unlawful violation of [his] civil rights."

"Abuse of process is a form of coercion to obtain a collateral advantage that is not properly involved in the proceeding itself." *Clean Water Action v. Searles Auto Recycling, Corp.*, 288 F. Supp. 3d 477, 481 (D. Mass. 2018) (*citing Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 (2000)).  In order to succeed on an abuse of process claim, Kamayou must show that "(1) a process was used (2) for an ulterior or illegitimate purpose (3) resulting in damages." *Id.* (*citing Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713 (2011)). "The Supreme Judicial Court has found that the process related to the bringing of criminal charges is one of the . . . types of process supporting a claim for abuse of process." *Fletcher v. Wagner*, 221 F. Supp. 2d 153, 155 (D. Mass. 2002).  However, "[f]iling a groundless claim or having an improper motive of vexation, harassment, or annoyance is relevant but does not alone

suffice to demonstrate ulterior purpose." *Empire Today, LLC v. National Floors Direct, Inc.*, 788 F. Supp. 2d 7, 23 (D. Mass. 2011). Rather, "there must be [an] intention to use process for coercion or harassment to obtain something not properly part of the suit." *North Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC*, 491 F. Supp. 2d 111, 130 (D. Mass. 2007).

Here, there is no dispute that the defendants were integral to a criminal proceeding being initiated against Kamayou. However, Kamayou has not adduced any evidence to suggest that the defendants had charges brought against him in order to justify treatment that was baseless and laced with malice. The record in fact shows that Zaryckyj had well-founded concerns that Kamayou might pose a danger to other University students and was doing nothing more than fulfilling his obligation to investigate; that he subsequently had a justified concern that the plaintiff was seeking to leave with his investigation related notes; and that the officers who intercepted the plaintiff had probable cause to believe he was committing a crime by leaving with the notes. In short, the record does not support a claim of abuse of process. Summary judgment should enter in the defendants' favor of this claim.

3. <u>False Arrest (Count IV)</u>

Count IV alleges in part that the defendants falsely arrested Kamayou. In order to succeed on a claim of false arrest, a plaintiff must show that: "(1) the defendant[s] intended to confine

the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant[s] had no privilege to cause the confinement." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995). "Although probable cause is not an element of false arrest, the existence of probable cause defeats a false arrest claim." *Cabot v. Lewis*, 241 F. Supp. 3d 239, 259 (D. Mass. 2017). As the court has already found that Sergeants Schaaf and Childs had probable cause to arrest the plaintiff, this claim necessarily fails and summary judgment should enter in favor of the defendants.

### 4. False Imprisonment (Count IV)

Count IV also alleges that the defendants falsely imprisoned Kamayou by bringing him to Zaryckyj' office for his "interrogation" and thereafter detaining him in the office. Under Massachusetts law, false imprisonment consists of the "(1) intentional and (2) unjustified (3) confinement of a person (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." *Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 55 (D. Mass. 2000). As noted above, Kamayou's false imprisonment claim cannot stand where the undisputed facts show that he traveled to Zaryckyj' office under his own power, was never handcuffed or restrained while there, was left alone to write a statement, left of his own volition, and was stopped by the officers only because

Zaryckyj believed Kamayou had his notes.  Summary judgment should therefore enter on this claim.

    5. <u>Assault and Battery (Count V)</u>

    Finally, Kamayou alleges that the defendants put him in fear of an offensive contact and then inflicted a severe beating on him.  "Assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." *Spencer v. Roche*, 755 F. Supp. 2d 250, 268 (D. Mass. 2010).  "A valid defense to a claim of assault and battery is that the police officer used reasonable force in conducting the arrest." *Lloyd v. Burt*, 997 F. Supp. 2d 71, 81 (D. Mass. 2014) (*citing Raiche*, 623 F.3d at 40).  "Where, as here, a plaintiff brings both a [section] 1983 excessive force claim and state law claims for assault and battery, the Court's determination of the reasonableness of the force used with respect to the [section] 1983 claim controls its assault and battery analysis." *Robinson v. Cook*, 863 F. Supp. 2d 49, 73 (D. Mass. 2012); *see also Watson v. Perez*, 168 F. Supp. 3d 365, 372 (D. Mass. 2016) (same).

    Applied here, and based on the court's treatment of Kamayou's excessive force claim, Sergeants Schaaf and Childs are not entitled to summary judgment on this claim because there is a genuine dispute of material fact as to whether they used objectively reasonable force under the circumstances. *See Lund v. Henderson*,

22 F. Supp. 3d 94, 105 (D. Mass. 2014) (denying summary judgment on assault and battery claim where genuine disputes of material fact remained as to whether officers used excessive force); *Howe v. Town of North Andover*, 854 F. Supp. 2d 131, 147 (D. Mass. 2012) (same). However, summary judgment should enter in Zaryckyj's favor where it is undisputed that he never made any physical contact with Kamayou.

**VI.   CONCLUSION**

For the foregoing reasons, there is a genuine dispute of fact as to whether Sergeants Schaaf and Childs used reasonable force on the plaintiff once they brought him to the ground.  Summary judgment should therefore be denied for any claim based on that allegation but should otherwise be entered in the defendants' favor.  Accordingly, the court recommends that the Defendants' Motion for Summary Judgment (Dkt. No. 33) be GRANTED on all counts with respect to defendant Zayckyj, that is, on Counts I, III, IV and V.  With respect to Sergeants Schaaf and Childs, the court recommends that the motion be GRANTED on all claims in Count I except for the claim of excessive force, with respect to which the motion should be DENIED.  The court further recommends that the motion be GRANTED on Counts III and IV, and DENIED on Count V.[3]

---

[3] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings,

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:   September 7, 2018

---

recommendations, or report to which objection is made and the basis for such
objections. The parties are further advised that the United States Court of
Appeals for this Circuit has repeatedly indicated that failure to comply with
Rule 72(b) will preclude further appellate review of the District Court's
order based on this Report and Recommendation. See Keating v. Secretary of
Health and Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v.
Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v.
Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d
376 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13 (1st Cir. 1983); *see
also Thomas v. Arn*, 474 U.S. 140 (1985).